UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FFV COYOTE LLC, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>CITY OF SAN JOSE,<br><br>　　　　　Defendant. | Case No. 22-cv-00837-VKD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 14 |

In this action, plaintiffs allege that defendant City of San Jose ("City") violated their Fifth Amendment rights by taking their property without compensation, as well as their Fourteenth Amendment rights to equal protection of the laws and to substantive due process. Dkt. No. 1. The City moves to dismiss the complaint for failure to state a claim for relief.[1] Dkt. No. 14. The Court held a hearing on the motion on June 21, 2022.[2] Dkt. Nos. 18, 20. Having considered the parties' submissions and arguments made at the hearing, the Court grants in part and denies in part the City's motion to dismiss.

**I.　BACKGROUND**

Unless otherwise noted, the following facts are based on the allegations of the complaint, which, for present purposes, are deemed true.

Plaintiffs are members of three families who own 126.5 acres of land comprising four adjacent parcels ("the land" or "NCV properties") in North Coyote Valley, near the southern

---

[1] All parties appearing have indicated their consent to magistrate judge jurisdiction. Dkt. Nos. 7, 9.

[2] The City did not appear at the hearing.

border of San Jose, California. Dkt. No. 1 ¶ 3. These families are legally organized as individuals, trustees, and limited liability companies. *Id.* ¶¶ 3-4. Plaintiffs' predecessors in interest acquired the parcels of land in 1960, 1963, and 1969. *Id.* ¶¶ 26-28. At the time plaintiffs' predecessors purchased the land, it was undeveloped and used mainly for agriculture. *Id.* ¶¶ 30-31. The current tenant of the land operated a seasonal pumpkin patch with hay rides, train rides, and a corn maze, but this use is no longer permitted. *Id.* ¶ 32.

San Jose, like all California cities, has a "general plan." *Id.* ¶ 18; Cal. Gov't Code § 65300. The first general plan, adopted in 1961, designated the NCV properties as "Light Industrial" land use. Dkt. No. 1 ¶ 25. The next general plan in 1975 changed the land use designation to "Agricultural." *Id.* ¶ 36. According to plaintiffs, after "market pressures for further urbanization of North Coyote Valley" grew, the City amended the general plan to designate the NCV properties for "Campus Industrial" land use in 1983. *Id.* ¶¶ 36-37. The City adopted new general plans in 1984 and 1994, and those plans continue to designate the NCV properties for "Campus Industrial" land use. *Id.* ¶¶ 39, 40.

In 2011, the City adopted its current general plan, *Envision San Jose 2040* ("GP 2040"), which changed the land use designation of the NCV properties from "Campus Industrial" to "Industrial Park." *Id.* ¶ 51. The "Industrial Park" designation "allows a wide variety of industrial uses." *Id.*

According to plaintiffs, "[a]s development in North Coyote Valley appeared to be more imminent, [various] interests lobbied the City to preserve North Coyote Valley and abandon the longtime plan to allow industrial development there." Dkt. No. 1 ¶ 55. In 2018, the City passed a bond measure that included a project proposal to spend $50 million to purchase land in North Coyote Valley. *Id.* ¶¶ 57-60. After the bond measure passed, the City partnered with Peninsula Open Space Trust and Santa Clara Valley Open Space Authority to purchase land in North Coyote Valley for the purpose of preserving it as open space. *See id.* ¶¶ 61-62, 64. The land in question, like the NCV properties, was designated for use as "Industrial Park." *Id.* ¶ 61. On November 6, 2019, the City approved the purchase of 937 acres owned by the non-party Brandenburg and Sobrato families. *Id.* ¶ 62.

Concurrently, in 2019, the City began a review of the current general plan. *Id.* ¶ 69. As part of the review, the City Council appointed a 40-member citizen task force to make recommendations regarding the general plan to the San Jose Planning Commission which, in turn, would make recommendations to the City Council about development and use of North Coyote Valley. *Id.* ¶ 69-70.

City staff working with the task force proposed a "new vision" for North Coyote Valley, namely, that it be "preserved as a resource for the community." *Id.* ¶ 70. In keeping with this objective, the City's staff recommended changing the land use designation of the NCV properties from "Industrial Park" to "Agricultural." *Id.* ¶ 72. The task force voted to accept the City's staff recommendations. *Id.*

In October 2021, when the task force's recommendations were presented to the Planning Commission, some commissioners noted that the designation change may be unfair to the North Coyote Valley property owners, specifically because the City had purchased the Brandenburg and Sobrato properties but was not offering to purchase the NCV Properties or to at least provide compensation for any resulting reduction in land value. *Id.* ¶ 74. The Planning Commission voted to deny the task force's recommendations. *Id.* Nevertheless, San Jose City Council amended the general plan to change the land use designation of plaintiffs' properties to "Agricultural," effective December 31, 2021. *Id.* ¶ 79. "Sites in the Agriculture designation are intended for a variety of agricultural uses, including grazing, dairying, raising of livestock, feedlots, orchards, row crops, nursery stock, flower growing, ancillary residential uses, ancillary commercial use such as fruit stands, and the processing of agricultural products." Dkt. No. 14 at 4; Dkt. No. 14-1, Ex. 1 at 12. This land use designation allows up to 1 dwelling unit per 20 acres. According to GP 2040, "[b]uilding intensity in this designation will be greatly limited. The minimum parcel in areas designated as Agriculture is 20 acres in size. This designation is intended to support existing and future agricultural uses on properties." Dkt. No. 14-1, Ex. 1 at 12.

Meanwhile, in January 2020, while the City's general plan was under review, plaintiffs entered into a contract with a developer to sell their land, then still designated as "Industrial Park" for $44.1 million. Dkt. No. 1 ¶ 66. In January 2022, a few days after the City changed the land

3

1  use designation to "Agricultural," the developer terminated its contract to buy plaintiffs' land.
2  Dkt. No. 1 ¶ 82.
3        Plaintiffs bring three claims for relief, pursuant to 42 U.S.C. § 1983, based on the City's
4  change of the land use designation to "Agricultural": (1) a claim that the City's action violates the
5  takings clause of the Fifth Amendment; (2) a claim that the City's action violates the equal
6  protection clause under the Fourteenth Amendment; and (3) a claim that the City's action violates
7  the substantive due process clause under the Fourteenth Amendment.

## II.    LEGAL STANDARD

      A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Id.* (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). In such a motion, all material allegations in the complaint must be taken as true and construed in the light most favorable to the claimant. *Id.*

      However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, "the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994).

      Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." This means that the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, only plausible claims for relief will survive a motion to dismiss. *Iqbal*, 556 U.S. at 679. A claim is plausible if its factual content permits the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* A plaintiff does not have to provide detailed facts, but the pleading must include "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Id.* at 678.

4

### III. DISCUSSION

#### A. The Parties' Requests for Judicial Notice

The parties ask the Court to take judicial notice of several documents in connection with their papers.

A court generally may not consider any material beyond the pleadings when ruling on a Rule 12(b)(6) motion. Documents appended to the complaint, incorporated by reference in the complaint, or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Rule 12(b)(6) motion. *Khoja v. Orexigen Therapeutics*, 889 F.3d 988, 998 (9th Cir. 2018); *see also Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). A document not attached to a complaint "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). And, "a *defendant* may seek to incorporate a document into the complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Khoja*, 899 F.3d at 998, 1002 (internal quotation marks omitted) (emphasis added). "[U]nlike judicial notice, a court may assume [an incorporated document's] contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Khoja*, 899 F.3d at 1003. But "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint. This admonition is, of course, consistent with the prohibition against resolving factual disputes at the pleading stage." *Id.* A court may take notice of public records, but not of disputed facts stated in public records. *Khoja*, 899 F.3d at 999 (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)). In addition, a court may take judicial notice of a fact not subject to reasonable dispute because it either is generally known within the trial court's territorial jurisdiction, or readily can be determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

Plaintiffs request that the Court take judicial notice of San Jose Municipal Code §§20.50.010 and 20.50.100. Dkt. No. 16, Ex. A. City ordinances are proper subjects of judicial notice under Fed. R. Evid. §201(b). *Joseph v. City of San Jose*, 2019 WL 3997482 at *1 (N.D.

Cal. 2019) (taking judicial notice of city ordinances); *see also see Newcomb v. Brennan*, 558 F.2d 825 (7th Cir. 1977) ("[C]ity ordinances fall within the category of 'common knowledge' and are therefore proper subjects for judicial notice."). The particular facts that plaintiffs ask the Court to judicially notice are that (1) The City's industrial zoning districts include the IP Industrial Park zone, the LI Light Industrial zone, and the HI Heavy Industrial zone (§§20.50.010(C)(3), (C)(4), (C)(5); and (2) "Warehouse/distribution facility" is a permitted land use in each of these three industrial zones. Because these facts are the proper subject of judicial notice, the Court will take notice of them.

The City requests that the Court take notice of the *Envision San Jose 2040* general plan (Dkt. No. 14-1, Ex. 1), two City ordinances (Dkt. No. 14-1, Exs. 2, 3), a City Council meeting synopsis (Dkt. No. 14-1, Ex. 4), a City Council resolution (Dkt. No. 14-1, Ex. 7) and two City memoranda (Dkt. No. 14-1, Ex. 5, 6). Plaintiffs generally object to the Court taking notice of any disputed facts contained in any of the City's proposed documents. Dkt. No. 15-1. Nevertheless, plaintiffs do not object to the Court taking notice of the existence of these public documents. *Id.* at 1. The Court will take notice of the existence only of these documents.

Plaintiffs further object to the Court taking notice of the two City memoranda as subject to dispute, hearsay, and irrelevant. *Id.* at 2-3. Plaintiffs' objections are well-taken, and the Court will not take notice of the two City memoranda (Dkt. No. 14-1, Ex. 5, 6), as these documents are not necessary to resolution of the present motion.

### B.     Claim 1: Fifth Amendment Taking

Plaintiffs allege that by changing the land use designation of the NCV properties from "Industrial Park" to "Agricultural," the City violated the takings clause of the Fifth Amendment.

The takings clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation." U.S. Const. Amend. V. "A classic taking occurs when the 'government directly appropriates private property or ousts the owner from his domain.'" *Bridge Aina Le'a, LLC v. Land Use Comm'n*, 950 F.3d 610, 625 (9th Cir. 2020), *cert. denied sub nom. Bridge Aina Le'a, LLC v. Hawaii Land Use Comm'n*, 141 S. Ct. 731 (2021) (quoting *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 539 (2005)). Takings are not limited to

government appropriation of property. "[A] regulatory taking occurs when the value or usefulness of private property is diminished by a regulatory action that does not involve a physical occupation of the property." *Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 965 (9th Cir. 2003); *see also Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2072 (2021) (a regulatory taking "imposes regulations that restrict a property owner's ability to use his own property").

"Courts determine whether a regulatory action is functionally equivalent to the classic taking using 'essentially ad hoc, factual inquiries, designed to allow careful examination and weighing of all the relevant circumstances.'" *Bridge Aina Le'a*, 950 F.3d at 625 (quoting *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322, (2002). In *Penn Central Transportation Company v. City of New York*, 438 U.S. 104 (1978), the Supreme Court addressed whether a regulation imposed by the City of New York affecting Grand Central Terminal constituted a taking. In holding that the City's regulation was not a taking, the Supreme Court evaluated three factors: (1) "[t]he economic impact of the regulation on the claimant," (2) "the extent to which the regulation has interfered with distinct investment-backed expectations," and (3) "the character of the governmental action." *Id.* at 124.

"Certain regulatory actions, however, are treated categorically as a taking without the necessity of the *Penn Central* inquiry." *Bridge Aina Le'a*, 950 F.3d at 625-26. In *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992), the Supreme Court considered a regulatory taking in which a property owner was "deprived of all economically beneficial use" of his property. *Id*. The Supreme Court held that a regulation that has such an effect necessarily constitutes a *per se* taking. *Id.* at 1020. Thus, the *Lucas* rule applies to a relatively narrow and relatively rare takings category, and is generally limited to the "extraordinary circumstance when no productive or economically beneficial use of land is permitted." *Id.* at 626.

Plaintiffs allege that the City's actions are a *per se* taking under *Lucas* because they have been deprived of all economically beneficial use of their land. Dkt. No. 1 ¶ 86. In the alternative, they allege that the City's actions constitute a taking under the *Penn Central* factors. *Id.* ¶ 87. As to both arguments, they assert that dismissal at this stage is inappropriate because resolution of

these issues is heavily dependent upon disputed facts. Dkt. No. 15 at 3; *see also DoorDash, Inc. v. City and Cnty. of San Francisco*, No. 21-cv-05502-EMC, 2022 WL 867254, at *19 (N.D. Cal. Mar. 23, 2022) (denying dismissal of takings claims where factual questions existed as to two out of three *Penn Central* factors). The City acknowledges that both *Lucas* and *Penn Central* depend on fact-specific analysis, but it argues that plaintiffs' allegations are merely conclusory and do not plausibly allege a taking under either theory. Dkt. No. 14 at 8; Dkt. No. 17 at 4-5.

Having considered the complaint, the Court concludes that, at the very least, plaintiffs have sufficiently stated a claim for violation of the Fifth Amendment under the *Penn Central* factors. *First*, plaintiffs plausibly allege that the economic impact of the City's actions is "severe." Dkt. No. 1 ¶ 87. They argue that the Agricultural designation precludes any economically viable use of the NCV properties. *Id.* ¶ 32. They allege that the City's actions were directly responsible for termination of the $44.1 million purchase agreement plaintiffs had with third party developers. *Id.* ¶ 82-83. Further, plaintiffs' complaint references an expert report that supports their allegation that agriculture is not an economically viable use of the NCV properties. Dkt. No. 1 ¶ 76. In addition, they allege that even the most recent uses of the property, such as "hay rides, train rides, a corn maze, and even launching pumpkins from giant cannons," are not permitted under the new land use designation. *Id.* ¶ 32. In sum, plaintiffs have plausibly alleged that the economic impact of the regulatory change may be so severe as to constitute a taking. Moreover, the extent of the economic impact on plaintiffs caused by the City's actions remains a question of fact that cannot be resolved at the pleadings.

*Second*, plaintiffs allege that the NCV properties were purchased as long-term investments. Dkt. No. 1 ¶ 29. They further allege facts that support their contention that the land could reasonably be sold for industrial development. Plaintiffs describe a trajectory that, but-for the regulatory change, would have earned them a significant return on the purchases they made 50-60 years ago. Plaintiffs say that they purchased the NCV properties in 1960, 1963, and 1969. *Id.* ¶ 26-28. When the City adopted its first general plan in 1961, the land was designated "Light Industrial." *Id.* ¶ 25. They allege that during the majority of the time they have owned the land it has been designated as suitable for industrial development such that they could, someday, sell the

8

land to a developer. *Id.* ¶¶ 29, 39, 40. Plaintiffs allege that, in the City's most recent general plan, of the three distinct planning areas that comprise Coyote Valley, only North Coyote Valley was designated for development. *Id.* ¶ 24. Finally, they point to the fact that "an estimated $116 million" has been spent on "infrastructure improvements in the North Coyote Valley since the 1980s to facilitate the development of industrial uses there." *Id.* ¶ 49. In light of these expectations, they allege they have continued to invest in the properties "by payment of property taxes and other expenses." *Id.* ¶ 29. Whether plaintiffs' expectations were reasonable is an "ad hoc, factual inquir[y]" that cannot be decided at the pleadings stage.

*Finally*, plaintiffs allege that the City's actions suggest that the regulatory change was intended to "preserve" the NCV properties for the benefit of the public, and that acquisition of a public resource through regulation necessitates just compensation. Dkt. No. 1 ¶¶ 70, 73, 87; Dkt. No. 15 at 17. They allege that the City "set out to" preserve the land by instructing the planning task force to consider a "new vision for Coyote Valley . . . as a resource for the community." Dkt. No. 1 ¶ 70. They further allege that the City accomplished its preservation aims by changing the land use designation of the NCV properties to "Agricultural." Dkt. No. 15 at 17. These allegations support plaintiffs' takings claim.

Because plaintiffs state a claim for violation of the Fifth Amendment under the *Penn Central* factors, the Court does not consider whether plaintiffs also state a claim for a *per se* taking under *Lucas*. The City's motion to dismiss plaintiffs' takings claim is denied.

**C.     Claim 2: Fourteenth Amendment Equal Protection**

Plaintiffs allege that the City's actions violate the equal protection clause of the Fourteenth Amendment. Specifically, plaintiffs allege that the City intentionally treated their property differently from other similarly situated properties, namely the Brandenburg East properties. The City says plaintiffs' claims fail because the properties are not similarly situated. Dkt. No. 17 at 7-8.

"The Supreme Court has recognized that an equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called 'class of one.'" *Gerhart v.*

9

*Lake Cnty., Mont.*, 637 F.3d 1013, 1021 (9th Cir. 2011) (internal quotation marks omitted); *see also Village of Willowbrook v. Olech*, 528 U.S. 562 (per curiam)).  In order to succeed on a "class of one" claim, plaintiffs must show that the City (1) intentionally (2) treated them differently than other similarly situated property owners, (3) without a rational basis.  *Willowbrook*, 528 U.S. at 564; *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008).  Although plaintiffs must show that the City's "decision was intentional," they need not show that the City was "motivated by subjective ill will."  *Gerhart*, 637 F.3d at 1022 (citing *Willowbrook*, 528 U.S. at 565).

Plaintiffs allege that the Brandenburg East properties, which the City purchased for preservation purposes in partnership with the Peninsula Open Space Trust and Santa Clara Valley Open Space Authority, are similarly situated to NCV properties.  Dkt. No. 1 ¶ 97.  They identify many similarities between the two properties.  For example, the two parcels of land are adjacent.  *Id.*  They were both designated as "Industrial Park" land use in GP 2040.  *Id.*  The two parcels were being used similarly and had similar accessibility at the relevant time.  *Id.*  And, developers were interested in the two properties for similar purposes.  *Id.*

Plaintiffs allege that the City intentionally treated the two parcels differently.  *See Gerhart*, 637 F.3d at 1022 ("[Plaintiff] must show that [defendant] intended to treat him differently . . . .").  For example, plaintiffs describe in detail the deliberative, extended processes the City employed before purchasing the Brandenburg East properties and before changing the land use designation of the NCV properties.  Dkt. No. 1 ¶¶ 61-64, 69-81.  And, plaintiffs allege that the City had no rational basis for treating the NCV properties differently than the Brandenburg East properties, when the City's actions "accomplished the same objective of preservation and prevention of urban development of the properties."  *Id.* ¶ 99.  Plaintiffs argue that this dissimilar treatment of similarly situated properties constitutes unlawful discrimination under the equal protection clause.

In challenging the pleadings, the City argues that the NCV properties and the Brandenburg East properties are not similarly situated.  Dkt. No. 17 at 7-8.  They argue that the Brandenburg East properties are located in the flood zone, and that this provides a basis for the City's different treatment of those properties.  The City further suggests that this alternative explanation for the

City's actions is so obvious as to require dismissal of the claim. *See Iqbal*, 446 U.S. at 682 (inference of liability not plausible where allegations gave rise to an "obvious alternative explanation" of legality).

The City's reasons for treating the Brandenburg East properties and the NCV properties differently, and whether the City had a rational basis for any different treatment, present issues of fact. *See Gerhart*, 637 F.3d at 1023 (9th Cir. 2011) (question of rational basis presented a genuine issue of material fact). Because plaintiffs' allegations are adequate to state a plausible claim for relief, dismissal is not appropriate at the pleading stage. *See Levin Richmond Terminal Corp. v. City of Richmond*, 482 F. Supp. 3d 944, 967 (N.D. Cal. 2020) (denying dismissal where whether defendant city acted with rational basis presented question of fact); *Sacramento Cnty. Retired Emps. Ass'n v. Cnty. of Sacramento*, No. CIV S-11-0355 KJM, 2012 WL 1082807, at *6 (E.D. Cal. Mar. 31, 2012) (in an equal protection case, "it is not the court's task on a motion to dismiss to determine whether defendant's actions were rationally related to its legitimate interest; rather, the court must determine whether plaintiffs have stated a claim for violation of the federal and state Equal Protection clauses.").

Accordingly, the City's motion to dismiss plaintiffs' equal protection claim is denied.

**D.     Claim 3: Fourteenth Amendment Substantive Due Process**

Plaintiffs allege that the City's actions violate the due process clause of the Fourteenth Amendment. Dkt. No. 1 ¶¶ 102-06. They say that the City's decision to use its power of eminent domain to purchase the Brandenburg East properties but not the NCV properties was arbitrary. *Id.* ¶ 104. The City argues that plaintiffs cannot state a claim for violation of substantive due process because any such claim is conduct covered by the takings clause. Dkt. No. 14 at 15-16. They argue that because plaintiffs pursue a takings claim, they cannot also pursue a claim for violation of substantive due process. *See id.*

Plaintiffs are correct that the rationality of land use regulations may be challenged under the substantive due process clause. *Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1024 (9th Cir. 2007); *see also Lingle*, 544 U.S. at 528. "An arbitrary and irrational deprivation of real property . . . might be 'so arbitrary or irrational that it runs afoul of

the Due Process Clause.'" *Id.* at 1025 (quoting *Lingle*, 544 U.S. at 542). However, while "the Fifth Amendment does not invariably preempt" a substantive due process claim, it does "preclude a due process challenge . . . if the alleged conduct is actually covered by the Takings Clause." *Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851, 855, 857 (9th Cir. 2007). "To the extent a property owner's complaint falls within one of the[] [*Lucas* or *Penn Central* takings] categories (or some other recognized application of the Takings Clause), . . . the claim must be analyzed under the Fifth Amendment whether or not it proves successful; but to the extent that the conduct alleged cannot be a taking, . . . a due process claim is not precluded." *Id.* at 855-56 (citing *Lingle,* 544 U.S. at 542); *see also Rancho de Calistoga v. City of Calistoga*, 800 F.3d 1083, 1093 (9th Cir. 2015) ("Such an overlapping theory dooms the substantive due process claim."); *Colony Cove Properties, LLC v. City of Carson*, 640 F.3d 948 (9th Cir. 2011).

Here, plaintiffs allege:

> The City violated Plaintiffs' right to substantive due process by arbitrarily using its power of eminent domain to *purchase* certain properties in lieu of condemnation in order to preserve them, while seeking to preserve the NCV Properties *without purchasing them* but rather changing their land use designation from Industrial Park to Agriculture.

Dkt. No. 1 ¶ 104 (emphasis added). That plaintiffs were not offered compensation in exchange for the change in land use designation is an integral element of the claim they bring pursuant to the due process clause. *Id.* This is further supported by plaintiffs comparing their properties that were not *purchased* by the City to those "certain properties" that were *purchased* by the City. *Id.* Additionally, in their opposition, plaintiffs reiterate that their substantive due process claim "is based on the City's arbitrary decision to use its power of eminent domain to preserve some properties by *purchase* but not others." Dkt. No. 15 at 21 (emphasis added).

Because plaintiffs' due process claim is based on acts or omissions related to compensation for their property, and because the Court has already concluded that plaintiffs state a claim for violation of the Fifth Amendment takings clause, plaintiffs cannot simultaneously maintain a claim for violation of substantive due process. *Crown Point Dev.*, 506 F.3d at 855-56. Accordingly, the City's motion to dismiss plaintiffs' substantive due process claim is granted.

However, because it is not clear that plaintiffs could plead no facts that plausibly support a separate and independent claim that arbitrary and irrational decisions by the City constitute a substantive due process violation, the Court gives plaintiffs leave to amend the complaint with respect to this claim. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts").

## IV. CONCLUSION

For the reasons explained above, the Court denies the City's motion to dismiss plaintiffs' takings and equal protections claims, but it grants the City's motion to dismiss plaintiffs' substantive due process claim, with leave to amend. If plaintiffs choose to amend the complaint, the amended pleading must be filed no later than **November 9, 2022**.

**IT IS SO ORDERED.**

Dated: October 26, 2022

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge